IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-165-3 |
| | : | |
| PHILLIP SAINSBURY | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                         **March 26, 2009**

During the jury trial of this case, defendant Phillip Sainsbury objected to the admission of records of his incarceration in Lehigh County Prison.  After consideration of the government's letter memorandum as well as defendant Sainsbury's letter memorandum and after hearing argument from counsel, I admitted the records, subject to a limiting instruction.  This memorandum sets forth my reasons for admitting this evidence.

**I. BACKGROUND**

Trammel Bledsoe, Philip Sainsbury and Joshua Burton, were charged in a nine-count indictment with various crimes arising out of two bank robberies.  Sainsbury was charged with conspiracy, two counts of armed bank robbery and two counts of using a firearm in relation to a crime of violence.  Bledsoe faced the same charges, plus one count of possession of a firearm by a felon.  Joshua Burton pleaded guilty on February 9, 2009

1

to assisting Bledsoe after one of the robberies.  Trial for Bledsoe and Sainsbury began on February 11, 2009.

During trial, the government played audio recordings of telephone conversations between Bledsoe (who was in Lehigh County Prison) and Burton (who was not) in which they referred to the other bank robber as "Wet Boy."[1]  These phone calls occurred in the days following the December 21, 2006 robbery.  Government Trial Exhibits 400A-L.  The government contended that "Wet Boy" was defendant Sainsbury and that the phone calls from the prison linked him to the December 21, 2006 bank robbery.  The government wanted to introduce Lehigh County Prison records to show that Sainsbury was in and out of custody at the same times "Wet Boy" was described in the calls as being in and out of custody.  While defendant Sainsbury conceded that the government could argue to the jury that he is "Wet Boy," he contended that the admission of his prison records would be prejudicial.  On balance, I found the danger of unfair prejudice did not substantially outweigh the prison records' probative value under F.R.E. 403.  The prison records, therefore, were admitted.

**II. THE LIMITED RELEVANCE OF SAINSBURY'S PRISON RECORDS.**

---

[1] For example, in the December 22, 2006 call at 12:21 p.m. Bledsoe is told that "Wet Boy" does not want to share any robbery proceeds because Bledsoe already had his share which was seized by police when he was arrested, approximately eight minutes after the robbery. Government's Trial Exhibit 400A.  Later calls reveal that negotiations have persuaded Wet Boy to give a portion of the robbery proceeds to Bledsoe.

2

To prove that Sainsbury robbed the Lafayette Ambassador Bank on December 21, 2006, the government introduced three pieces of evidence. First, a dark glove containing Sainsbury's DNA was recovered on the ground near a home on Alpine Circle in Emmaus, Pennsylvania. The getaway vehicle was stopped on Alpine Circle by police minutes after the robbery. The police officer who stopped this car gave chase to Bledsoe, who fled on foot. In his absence, the two remaining occupants of the car left without further police contact. The black glove recovered three days later did not belong to the residents of the Alpine Circle home and was secured and later tested by police.

Second, the recorded prison phone calls (between Bledsoe and Burton) refer to one "Little T" who was established to be Sainsbury's girlfriend, Teon Riddick, a/k/a Teon Sainsbury.[2] In a phone call during which Burton informed Bledsoe about his lack of success in recovering robbery proceeds from "Wet Boy," Burton also says that "Little T said that she is telling on us." Government Trial Exhibit 400C. In a call made the following day about getting the robbery proceeds, Burton says he saw Little T who "didn't say nothing." Bledsoe responds that she better not say anything about "her man" because he was "holding her down." Government's Trial Exhibit 400F. The government contended that these statements tended to prove that Little T was "Wet Boy's" girlfriend.

The third link between Sainsbury and the robbery was based on Sainsbury's

---

[2] The government introduced letters that Sainsbury sent to his girlfriend, Teon which were recovered from the couple's home and which refer to her as "T" and "baby T." Government's Trial Exhibits 31A-G.

nickname, at least to Bledsoe, of "Wet Boy."  The government introduced evidence that seven references to "Wet Boy's" incarceration status corresponded to Sainsbury's incarceration status at that time.  Sainsbury was in custody from October 6, 2006 until October 13, 2006 and from January 31, 2007 until May 21, 2007.  He has been in custody in this case since May 24, 2007.  After the first incarceration period and before the second period began, five conversations regarding "Wet Boy's" "at liberty" status occurred between Burton and Bledsoe.  Government Trial Exhibits 400A, 400B, 400C, 400D, and 400F.  During this time period, Sainsbury was also at liberty.  Twice during "Wet Boy's" second incarceration period (on February 4, 2007 and February 5, 2007) Burton and Bledsoe discussed "Wet Boy's" "in custody" status.  Government Trial Exhibits 400H and 400I.  On those dates, Sainsbury was in custody.  Sainsbury was released from his second incarceration period on May 21, 2007.  Three days later, on May 24, 2007, Burton and Bledsoe discussed "Wet Boy's" "at liberty" status.  Government Trial Exhibit 400L.

   The evidence tracking Sainsbury's time in custody was critical to the government's case.  The government's case against Sainsbury depended, in part, on the DNA found in the black glove recovered at Alpine Circle, as well as the references to "Little T" in the recorded prison phone calls.  The prison record evidence, however, had significant probative value in proving Sainsbury's identity as "Wet Boy."  Proof that Sainsbury was "Wet Boy" was further circumstantial evidence that he played a role in the Lafayette Ambassador Bank robbery.

Sainsbury argues that the introduction of the prison records to prove identity is unduly prejudicial. There is no question that Sainsbury's prison records were prejudicial to him.[3] However, F.R.E. 403 only protects against the admission of evidence that is <u>unfairly</u> prejudicial. <u>Carter v. Hewitt</u>, 617 F.2d 961, 972 (3d Cir. 1980). Here, the probative value of the records substantially outweighed the danger of <u>unfair</u> prejudice to Sainsbury. The government showed that the evidence that Sainsbury was in custody was critical to showing that he is "Wet Boy," one of the individuals who robbed Lafayette Ambassador Bank. Mindful that the general rule weighs in favor of admission, <u>see e.g.</u>, <u>United States v. Johnson</u>, 199 F.3d 123, 128 (3d Cir. 1999), as well as the critical nature of this evidence to the government, the prison records were admitted. The jury was instructed twice, once at the time of introduction of the prison records and again in the court's charge to the jury,[4] that the records were admitted for the limited purpose of

---

[3] At the time of his objection to the prison records, however, Sainsbury had already put in front of the jury (through his own counsel's cross-examination of government witness Jaime Cooper) the perhaps equally prejudicial fact that he traded marijuana and crack cocaine for the use of the "getaway car."

[4] The instruction I gave to the jury prior to deliberation is as follows: "Limiting Instructions - Sainsbury's Prison Record. There was evidence admitted which the government contends proves that defendant Sainsbury was in custody at certain times or not in custody at certain times. This evidence was admitted for a limited purpose. You may only consider it for a limited purpose. That limited purpose is for your consideration on the issues of the identity of one of the bank robbers. The government contends that the references in the prison telephone conversations to 'Wet Boy' are references to Mr. Sainsbury. The evidence that Mr. Sainsbury was in custody of the authorities is relevant only to the extent it may identify the person who is being referred to in the prison conversation as 'Wet Boy.' You are free to accept or reject this evidence as you see fit. You may not consider this evidence as evidence of bad character, or of a tendency to commit crimes or of any bad acts on his part. The circumstances of these periods of Mr. Sainsbury being in custody are not relevant and you may not consider or speculate about the

showing Sainsbury's identity as "Wet Boy." These limiting instructions were sufficient to lessen the prejudice to Sainsbury, to focus the jury on the limited role of this evidence, and to guide the jury not to draw improper inferences about Sainsbury's record or his character.

          BY THE COURT:


           /s/ Lawrence F. Stengel
          LAWRENCE F. STENGEL, J.

---

circumstances of his being in custody. Beyond the very limited purpose of this evidence - i.e. whether it tends to establish the identity of a person referred to in the recorded prison conversations - this evidence has no relevance to you as to whether Mr. Sainsbury was involved in any of these crimes."