**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 07-cr-0165-02 |
| | : | |
| PHILIP SAINSBURY, | : | |

---

**O P I N I O N**
**Amended Motion to Reduce Sentence, ECF No. 431 – Denied**

Joseph F. Leeson, Jr.                                                    **January 20, 2022**
United States District Judge

### I.        INTRODUCTION

Philip Sainsbury seeks a compassionate release from his 33-year prison sentence under the First Step Act. *See* Mot., ECF No. 431. Sainsbury argues that his sentence should be reduced because he would only be sentenced to 14 years for committing the same crimes today. He also argues that his medical conditions increase the likelihood of severe outcomes from COVID, which also warrants an early release. Lastly, he lists several other reasons that he argues qualify as extraordinary and compelling reasons for reducing his sentence. For the reasons below, the Court denies Sainsbury's Motion.

### II.       BACKGROUND

Shortly before Christmas in 2005, Sainsbury robbed a credit union at gunpoint. *See* Mot. 3. One year later, again just days before Christmas, Sainsbury robbed a bank at gunpoint. *See id.* As a result, a grand jury returned a multiple count indictment against Sainsbury and a co-defendant. *See id.*

The prosecution made a "20-year joint plea offer" to Sainsbury and his co-defendant, which, according to Sainsbury, was contingent on the acceptance of both Sainsbury and his co-defendant. *See id.* Sainsbury's co-defendant did not want to accept the offer, so both went to trial instead. *See*

1

*id.* 4. A jury found Sainsbury guilty of conspiracy to commit armed robbery, armed robbery, and two counts of use of a firearm during a crime of violence.[1] *See* ECF No. 262.

Sainsbury's use of a firearm during both robberies constituted two violations of section 924(c) of 18 U.S.C. At the time of his sentencing, each additional violation of section 924(c) after the first violation carried a 25-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(C)(i) (2009) (amended by First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22). As a result, he was sentenced to a total of 8 years of imprisonment on four of five counts and an additional 25-year mandatory minimum of imprisonment on the fifth count because it was a second offense under section 924(c). *See* ECF No. 304. Since each count runs consecutively, his final sentence amounted to 33 years of imprisonment. *See id.*

Sainsbury has now served more than 16 years of his sentence. *See* Mot. 28. His projected release date is July 4, 2035. *See id.* 5

Several years after Sainsbury's sentencing in 2009, the COVID pandemic hit. In order to combat COVID in the prison population, the Bureau of Prisons (BOP) took significant steps, including offering emergency vaccines to inmates. Sainsbury received two doses of the Moderna Vaccine. *See* Med. Rec., ECF. No. 436.[2] He still contracted COVID but ultimately recovered. *See id.*

In addition to COVID, the BOP watches Sainsbury's health for other medical conditions. For example, Sainsbury is monitored for mild obesity with a recorded body mass index of 31.1.[3]

---

[1]     The jury found Sainsbury guilty of the following five counts: (1) conspiracy to commit armed bank robbery, (2) armed credit union robbery and aiding and abetting, (3) use and carry a firearm during and in relation to a crime of violence and aiding and abetting, (4) armed bank robbery and aiding and abetting, and (5) use and carry a firearm during and in relation to a crime of violence and aiding and abetting. *See* ECF No. 262.

[2]     In support of its opposition to Sainsbury's Motion, the Government filed Sainsbury's medical records under seal.

[3]     This reading was taken at the end of 2020 and is the most current reading the Court has. *See* Med. Rec.

*See id.* He is also at risk of hypertension with a recorded blood pressure of 132/98.[4] *See id.* According to Sainsbury, he also suffers from Crohn's disease and nerve pain. *See* Mot. 26.

### III.        LEGAL STANDARD —The First Step Act—Review of Applicable Law

Congress passed the First Step Act in 2018, in part, to reduce the growing prisoner population in the Federal prison system. *See United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). Under the First Step Act, a defendant may ask a district court to reduce his sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The First Step Act does not define what qualifies as "extraordinary" and "compelling," but the United States Sentencing Commission has issued a policy statement addressing the topic.

The policy statement gives four circumstances under which extraordinary and compelling reasons could exist: (1) medical condition; (2) age; (3) family circumstances; and (4) other reasons as determined by the Director of the BOP. *See* U.S.S.G. § 1B1.13 cmt. N.1 (A)–(D). The policy statement is not binding on district courts, but "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

Regarding compassionate release for a medical condition, the policy statement suggests that courts should consider whether the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. N.1.

If extraordinary and compelling reasons justify the reduction of a defendant's sentence, courts then consider the factors set forth in section 3553(a) and whether the defendant poses a danger to the safety of any other person or to the community.[5] *See* 18 U.S.C. § 3582(c)(1)(A); *see*

---

[4]        This reading was taken in March 2021 and is the most current reading the Court has. *See* Med. Rec.

[5]        The factors include (1) the nature and circumstances of the offense and history of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, (3) the kinds of sentences available, (4) the sentencing range established for the offense, (5) any relevant policy

*also id.* § 3142(g) "A defendant has the burden of establishing circumstances warranting his release." *United States v. Neal*, No. 2:08-CR-00628-JMG-5, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020).

The First Step Act also amended prior sentencing guidelines for offenses under section 924(c). *See* First Step Act § 403(a). Section 924(c) originally imposed on defendants "a term of imprisonment not less than 25 years" for every "second or subsequent conviction under this subsection." *See* 18 U.S.C. § 924(c)(1)(C)(i) (2009) (amended by First Step Act § 403(a)). This practice of adding mandatory 25-year sentences with each violation, even if charged in a single case, is known as "stacking."

The First Step Act changed that section so that defendants were only subject to stacking of 25-year sentences for "violation[s] of this subsection that occurs *after a prior conviction under this subsection has become final*." First Step Act § 403(a) (emphasis added). Congress did not make this amendment apply retroactively. *See id.* § 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.").

IV.     **ANALYSIS**

In his Motion, Sainsbury gives two main reasons that he contends are extraordinary and compelling justifications for his early release. First, he would receive a shorter sentence if he was sentenced for the same crimes today. *See* Mot. 1. Second, he has pre-existing medical conditions that put him at heightened risk of severe illness if he contracts COVID again. *See id.* 22. The Court addresses and rejects both arguments in turn. It then briefly addresses several other reasons that

---

statement from the Sentencing Commission, (6), the need to avoid unwarranted sentence disparities among similar defendants, and (7) the need to provide restitution to any victims. *See* 18 U.S.C.A § 3553 (a)(1)–(7).

Sainsbury asserts qualify as extraordinary and compelling reasons for reducing his sentence. Ultimately, the Court determines that Sainsbury does not meet his burden of establishing that there are extraordinary and compelling reasons to reduce his sentence. Since Sainsbury does not establish any extraordinary and compelling reasons for his release, this Court does not analyze the factors set forth in section 3553(a). Nor does it analyze whether his release would pose a danger to any other person and the community.

> ### a. The fact that Sainsbury's sentence would be shorter if imposed post First Step Act is not an extraordinary and compelling reason for early release.

Sainsbury first asserts that he should be released early because his sentence would be shorter if he were sentenced for the same crimes today. *See* Mot. 7. It's true that Sainsbury's elevated sentence is largely because, at the time, each additional section 924(c) violation carried a 25-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(C)(i) (2009) (amended by First Step Act § 403(a)).

The same section today, now amended by the First Step Act, no longer has the same stacking of 25-year minimums for additional offenses unless the defendant has already been convicted of a section 924(c) charge at the time of the subsequent offense(s). *See* First Step Act § 403(a). In other words, stacking 25-year minimums is no longer done for violations in the same case, like it was done in Sainsbury's case. If he were sentenced for the same crimes today, he would be subject to a 14-year mandatory minimum. *See* 18 U.S.C. §924(c)(1)(A)(ii) ("any person who, during and in relation to any crime of violence . . . uses or carries a firearm . . . in furtherance of any such crime . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years").

For that reason, Sainsbury argues that his current sentence is overly harsh, which qualifies as an extraordinary and compelling reason to reduce his sentence. The Third Circuit Court of Appeals addressed this exact issue in *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021).

In *Andrews*, the defendant was convicted of multiple section 924(c) offenses in a single case and was sentenced under the prior version of section 924(c). *See id.* at 256. If the defendant had been sentenced after Congress passed the First Step Act, he would have been subject to a mandatory minimum of 91 years. *See id.* Instead, he was sentenced to a mandatory minimum of 312 years. *See id.* Despite the stark contrast in the length of sentences—the only difference being when the defendant was sentenced—the Third Circuit determined that there were not extraordinary and compelling reasons to reduce his 312-year sentence. *See id.* at 260–61.

The Third Circuit reasoned that "Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." *See id.* at 261; *see also* First Step Act § 403(b). "'[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced.'" *See id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). The Third Circuit was crystal clear when it held, "we will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release." *See* 12 F.4th 255, 261.

Sainsbury himself concedes that the "First Step Act did not make this change to § 924(c) retroactive." *See* Mot. 17. However, Sainsbury argues that even if the First Step Act does not apply retroactively, that does not mean that this Court is prohibited from considering the length of his current sentence when deciding whether it should be reduced. *See* Mot. 20. Indeed, many courts in this district have held that the vast difference in the length of sentences received pre-First Step Act compared to those received post is an important factor when adjudicating a motion to reduce sentence even though the First Step Act does not apply retroactively. *See e.g., United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020); *United States v. Ezell*, 518 F. Supp. 3d 851, 858 (E.D. Pa. 2021); *United States v. Pollard*, No. CR 10-633-1, 2020

WL 4674126, at *6 (E.D. Pa. Aug. 12, 2020). In *Andrews*, however, the Third Circuit closed that door to defendants too.

The Third Circuit stated that, "considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties." *Andrews*, 12 F.4th 255, 261 (3d Cir. 2021). The Third Circuit determined that the defendant's 312-year sentence in *Andrews* was not extraordinary because "there is nothing extraordinary about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *See id.* at 260 (cleaned up).

Even though Sainsbury would not receive the same sentence today for committing the exact same crimes, the sentence imposed was, at the time, lawful. According to the Third Circuit, "[t]the duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." *Id.* at 260–61.

In sum, it matters not what this Court thinks. The Third Circuit Court of Appeals has already ruled on the issue: Congress's amendment to section 924(c) cannot be applied retroactively for Sainsbury, and the length of his sentence, no matter how long, is not an extraordinary and compelling reason for early release. *See id.* at 260–62.

**b. Sainsbury has not established that he is at increased risk of becoming severely ill if he contracts COVID.**

Sainsbury next argues that the possibility of contracting the Coronavirus again is an extraordinary and compelling reason for his early release because of his pre-existing medical conditions. *See* Mot. 1. Specifically, he asserts that he is at a heightened risk for severe illness or death from the Coronavirus because he suffers from hypertension, Crohn's disease, and nerve pain and because he is obese. *See id.* 26; *see also* ECF No. 439.

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*,

954 F.3d 594, 597 (3d Cir. 2020). In order to establish extraordinary and compelling reasons to

reduce Sainsbury's sentence for COVID related reasons, he must show that he "suffers from a

serious condition that increases the likelihood of severe consequences from COVID-19." *United*

*States v. Wragg*, No. CR 15-398, 2020 WL 4015204, at *7 (E.D. Pa. July 16, 2020), appeal

dismissed sub nom. No. 20-2566, 2020 WL 8373384 (3d Cir. Nov. 17, 2020) (quoting *United States*

*v. Somerville*, No. 12-225, 2020 WL 2781585, at *7, 2020 U.S. Dist. LEXIS 93935, at *18 (W.D.

Pa May 29, 2020).

　　　Here, Sainsbury does not meet his burden. Two of the four medical conditions he raises—

Crohn's disease and nerve pain—do not increase his risk of becoming severely ill from contracting

COVID. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL

AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-

with-medical-conditions.html (updated Dec. 14, 2021) (last visited Jan. 13, 2022); *see also United*

*States v. Moldover*, No. CR 14-637, 2020 WL 6731111, at *10 (E.D. Pa. Nov. 13, 2020) (explaining

that nerve damage does not increase ones risk of becoming seriously ill from COVID); *United*

*States v. Rogers*, No. 1:16-CR-00072-NONE, 2020 WL 5440352, at *5 (E.D. Cal. Sept. 10, 2020)

(explaining that Crohn's disease does not increase ones risk of becoming seriously ill from

COVID).

　　　The CDC does, however, recognize that hypertension could "possibly" increase Sainsbury's

risk of becoming seriously ill from COVID. *See People with Certain Medical Conditions*,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html (last visited Jan. 13, 2022)*.* However, Sainsbury's hypertension is manageable. The

most recent reading the Court has of Sainsbury's blood pressure is 132/98. *See Med. Rec*. This puts

Sainsbury in the lower end of stage one hypertension, "also known as prehypertension*." See*

*Prehypertension: Are You at Risk?*, WEBMD, https://www.webmd.com/hypertension-high-blood-

pressure/guide/prehypertension-are-you-at-risk (updated Feb. 4, 2021) (last visited Jan. 13, 2022). A mild case of hypertension, without more, does not warrant early release, even during the COVID pandemic. *See Neal*, No. 2:08-CR-00628-JMG-5, 2020 WL 5993290, at *6 (determining that neither stage one hypertension nor stage two hypertension justify early release in light of the COVID pandemic).

The CDC also recognizes that obesity can increase the risk of severe illness from COVID. *See People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 13, 2022). However, with a body mass index of 31.1, Sainsbury is only mildly obese. See *United States v. Irizzary*, No. CR 14-652-13, 2021 WL 735779, at *5 (E.D. Pa. Feb. 25, 2021) (determining that a defendant with a BMI of 31.5 was on the low end of the obesity spectrum and denying compassionate release); *see also United States v. Collazo*, No. CR 99-304, 2021 WL 632678, at *3 (E.D. Pa. Feb. 18, 2021) (denying defendant's motion for compassionate release where defendant had a BMI of 32.4 and suffered from hypertension, noting that "courts have been reluctant in general to grant compassionate release where, as here, mild obesity is the only risk factor presented," and collecting cases). In addition, Sainsbury has not shown that "his mild obesity diminishes his ability to provide self-care or that it can be considered a condition from which he is not expected to recover." *United States v. Dobson*, No. 5:08-CR-00134, 2021 WL 1037852, at *4 (E.D. Pa. Mar. 18, 2021) (quoting U.S.S.G. § 1B1.13, App. Note 1). Absent any other severe medical conditions, mild obesity is not an extraordinary and compelling reason for early release, even in light of the COVID pandemic.

Moreover, many other factors weigh against granting early release for medical reasons. For example, Sainsbury is well under sixty-five years of age. *See Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *6 ("As [the defendant] is below the age of sixty-five and submits no evidence that he suffers from other conditions making him immunocompromised, he does not qualify under this

guidance as being at a greater risk of becoming severely infected by COVID-19."). Also, Sainsbury received both doses of the Moderna vaccine. *See United States v. Roper*, No. CR 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("The risk posed to an inoculated [defendant] is not an extraordinary and compelling reason for his release.").

Perhaps the biggest stumbling block to Sainsbury's argument is that he has already recovered once from COVID. The Court acknowledges that it is possible that Sainsbury could contract COVID a second time. However, evidence suggests that receiving the vaccine and being previously infected both provide at least some level of resistance to future infection. *See Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html, (updated Oct. 29, 2021) (last visited Jan. 13, 2022). Each of these reasons weigh against an early release for COVID reasons.[6]

In sum, Sainsbury's "medical issues are not sufficiently serious" to warrant early release. *Neal*, No. 2:08-CR-00628-JMG-5, 2020 WL 5993290, at *4.

###    c.  Sainsbury's other proffered reasons for early release are not extraordinary and compelling.[7]

In addition to the two major arguments addressed above, Sainsbury also lists five other reasons that he asserts supports his early release. *See* Mot. 22–25.

---

[6]    The Court notes that our understanding of COVID is still evolving. This Opinion does not stop Sainsbury from seeking compassionate release in the future should circumstances change or modern-day science reveal that he is at severe risk of becoming severely ill from contracting COVID.

[7]    Sainsbury argues that these additional reasons should be considered as "extraordinary and compelling" under the First Act, 18 U.S.C. § 3582(c)(1)(A)(i). *See* Mot. 22. In reality, a majority of these additional reasons would be better suited for consideration under sections 3553(a) or 3142(g) if he established extraordinary and compelling reasons for compassionate release first. Nevertheless, the Court briefly addresses each of these additional reasons listed and explains why they are not extraordinary and compelling reasons for reducing his sentence.

First, he argues that his current sentence is "not due to his culpability, but due to a trial penalty." *Id.* 22. According to Sainsbury, his long sentence was a punishment for rejecting the offered plea bargain and choosing to go to trial. *See id.* The defendant in *United States v. Clausen* No. CR 00-291-2, 2020 WL 4260795 (E.D. Pa. July 24, 2020) made the same argument. The *Clausen* court, however, determined that the so called "trial penalty" is not an extraordinary and compelling reason to reduce a defendant's sentence. *See id.* at *7 n.8.

This Court agrees with the *Clausen* court because defendants have no guaranteed right to receive a plea bargain tailored to their desires. In fact, defendants have no right to a plea bargain at all. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("defendants have no right to be offered a plea" (cleaned up)). And so long as a prosecutor "has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Moscony*, 927 F.2d 742, 755 (3d Cir. 1991) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

Sainsbury's rights were not violated when he did not receive the plea bargain he wanted. He exercised his right to a jury trial, and the prosecutor acted within his discretion by bringing the charges that Sainsbury was found guilty of committing. In addition, Sainsbury "presented no facts showing that prosecutors abused their discretion" in his case. *Andrews*, 12 F.4th 255, 262 (3d Cir. 2021).

Second, Sainsbury argues that his sentence should be reduced because he "has had no incidents of violence over the past 14 years that he has spent in prison." Mot. 23. However, this type of behavior is not extraordinary. *See United States v. Claude*, 504 F. Supp. 3d 460, 462 (E.D. Pa. 2020), aff'd, 16 F.4th 422 (3d Cir. 2021) (explaining that "extraordinary" is something beyond "what is usual, customary, regular or common"). The Court acknowledges Sainsbury for his

decision to abstain from violence while serving his sentence, but that is precisely what is expected of him. So, it does not warrant an early release.

Third, Sainsbury argues that his sentence should be reduced because he "has a solid release plan an[d] [a]n extremely strong support system to facilitate his successful return to the community." Mot. 25. Again, this is acknowledged, and the Court would certainly consider this if extraordinary and compelling reasons existed for reducing his sentence. But "a solid release plan" is not an extraordinary and compelling reason in and of itself because it does not establish that irreparable harm will result if Sainsbury is not released early. *See Claude*, 504 F. Supp. 3d 460, 462 (explaining that a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met"). Indeed, many defendants likely have a plan for when they're released, so it is not extraordinary either. *See id.*

 Sainsbury's fourth and fifth arguments are related. He asserts that he "has demonstrated considerable personal growth and rehabilitation," and that his "rehabilitation is acknowledged and applauded by members of the community, family, a retired correctional officer . . . and one of the victims of his crime." Mot. 22–23. The Court agrees that Sainsbury's rehabilitation is commendable. However, "rehabilitation alone does not qualify him for a reduced sentence as a matter of law." *Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020). Since rehabilitation cannot suffice on its own as a reason for early release, and because the Court has determined that none of Sainsbury's other proffered reasons are extraordinary and compelling, his argument here falls short of his burden.

In sum, Sainsbury's "other extraordinary and compelling reasons," Mot. 22, are not actually extraordinary and compelling, even when considered together. Since Sainsbury has not established any extraordinary and compelling reasons for reducing his sentence, the Court does not analyze the

factors under section 3553(a) or whether Sainsbury poses a danger to the safety of any other person or to the community.

## V.        CONCLUSION

The amendment of sentencing stacking in section 924(c) cannot be applied retroactively for Sainsbury, and the length of his lawfully imposed sentence is not an extraordinary and compelling reason for his early release as a matter of law. In addition, he has not shown that he suffers from serious medical conditions that would increase his risk of becoming seriously ill from COVID. Nor has he shown any other extraordinary and compelling reason to reduce his sentence. For these reasons, the Court denies his Amended Motion to Reduce Sentence.

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge